**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Shaunquelle P.,

Plaintiff,

v.

Martin J. O'Malley, Commissioner of the Social Security Administration,

Defendant.

Case No. 23-CV-0556 (JFD)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shaunquelle P. seeks judicial review of a final decision by the Commissioner of the Social Security Administration, which denied the Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The case is before the Court on the parties' briefing (Dkt. Nos. 16 and 18). Plaintiff argues that the administrative law judge ("ALJ") who authored the written decision did not properly account for the total limiting effects of Plaintiff's physical impairments in assessing Plaintiff's residual functional capacity ("RFC"). Defendant opposes Plaintiff's position and asks the Court to affirm the final decision. As set forth below, the Court concludes that the ALJ did not err and therefore denies the relief requested in Plaintiff's brief, grants the relief requested in Defendant's brief, and affirms the final decision.

## I. Background

Plaintiff applied for DIB and SSI on December 31, 2020, alleging she has been disabled since April 13, 2019, due to two herniated disks, chronic back and nerve pain, hypertension, a heart condition, and anxiety. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 348, 352.)[1] Her date last insured for the purpose of her DIB claim is June 30, 2021, meaning she must show that she was disabled on or before that date. (*See* Pl.'s Br. at 1.)

### A. Relevant Evidence[2]

Plaintiff had L4-S1 spinal-fusion surgery in 2016. (*See* R. 417.) After the surgery, she saw Jeffrey S. Pinto, M.D., among others, for follow-up. In April 2018, Plaintiff told Dr. Pinto that her pain was only 1/10 and that she had obtained 95% relief of her pre-surgery symptoms. (R. 431.) On examination, Dr. Pinto found her strength a 5/5 in the lower extremities and a full range of motion in the low back, hips, knees, and ankles. (R. 431.) A straight-leg-raising test was normal.

In November 2019, saw Ryan Heisler, PA-C, for low back pain and intermittent leg pain. (R. 421.) On examination, Mr. Heisler observed pain with external hip rotation, flexion, and extension; diffuse tenderness of the L4-5 spinal segment; full strength; normal sensation; and no gait problems. (R. 422.)

---

[1] The administrative record is filed at Dkt. No. 12. The record is consecutively paginated, and the Court cites to that pagination rather than ECF number and page.

[2] Plaintiff does not allege any error with respect to the ALJ's mental RFC findings. (Pl.'s Br. at 3 n.4.) Accordingly, the Court summarizes only the evidence relevant to the ALJ's physical RFC findings, with the understanding that physical pain can affect mental functioning.

In October 2020, David Strothman, M.D., recorded 5/5 strength in all motor groups and intact sensation. (R. 419.) A recent MRI of the lumbar spine showed satisfactory positioning of the spinal-fusion implants, a solid fusion from L4 to the sacrum, no segmental instability, no nerve root impingement, and normal disc height and hydration. (R. 419.)

In November 2020, Steven Stulc, D.O., noted that Plaintiff "has been making some good gains" from physical therapy and that the most recent imaging showed "essentially normal thoracic and lumbar" findings above the L4-S1 fusion. (R. 413.) One month later, in December 2020, Plaintiff told physical therapist Marnie Kasinskas that she was continuing to make progress. (R. 560.) Ms. Kasinskas wrote that Plaintiff was responding well to physical therapy, including increased range of motion, decreased pain, and improved functioning and activity tolerance. (R. 561.) Also in December 2020, Jacob Deweerth, M.D., evaluated Plaintiff for pain management. He observed tender points and trigger points in her spine, and reduced range of motion with flexion, extension, and side-bending. (R. 678.) Imaging and an MRI of the lumbar spine were normal, and Dr. Deweerth thoughts Plaintiff's pain was likely myofascial in nature. (R. 679.) Dr. Deweerth recommended physical therapy, "pain psychology," and trigger point injections. (R. 674.)

Plaintiff had an appointment with Hilary B. Stoffel, PsyD, LP, in February 2021 to determine whether Plaintiff would benefit from "pain psychology" as part of her pain management services. (R. 612.) Plaintiff reported worsening back pain, most severe in the mid-thoracic spine. (R. 612.) Her pain reportedly interfered with her relationships, quality of life, activities of daily living, and sleep. (R. 612.) Ms. Stoffel believed Plaintiff would

benefit from pacing her activities, exploring concepts of radical acceptance and tolerance, sleep hygiene, self-soothing strategies, psychoeducation, and a regular pain management regimen. (R. 614.)

On October 7, 2021, Dr. Stulc completed a medical opinion form. (R. 1105–08.) He described Plaintiff's physical limitations as "limited lifting/carrying/sitting/standing/walking/bending" and indicated she could not work more than 20 hours a week. (R. 1106.) Dr. Stulc provided no further details on the form.

Plaintiff attended an appointment for low back pain with Brendan C. Murphy, PA-C, on October 21, 2021. Mr. Murphy's objective findings included full and pain-free range of motion in both hips; no spinal deformity or swelling; full functional strength of the head, neck, and spine; full strength in the hips and legs, excepting one muscle; full functional strength of the ankles; and a stable and well-coordinated gait. (R. 1102–03.) Dr. Stulc saw Plaintiff four days later, noting that an MRI from 2019 did not show any degeneration or nerve impingement. (R. 1100.) The progress note reflects a subjective report of continued low back pain but no objective findings. (R. 1100–01.)

Dr. Stulc completed a Medical Source Statement form on February 14, 2022, providing more details than he had on the October 2021 form. (R. 1160–64.) His diagnosis was chronic low back pain and a "failed back surgery." (R. 1160.) In the place on the form where he was asked to identify the supporting clinical findings, laboratory, and test results, he wrote "chronic low back pain. SIP AP fusion L4-S1." (R. 1160.) He characterized Plaintiff's pain as occurring daily and ranking a 10/10. (R. 1160.) Positive objective findings, according to Dr. Stulc, included decreased range of motion on flexion and

extension, a positive straight leg raising test, tenderness, and impaired sleep. (R. 1161.) Dr. Stulc opined that Plaintiff's impairments would interfere with her attention and concentration constantly. (R. 1161.) Regarding functional limitations, Dr. Stulc opined that Plaintiff could continuously sit for 20 minutes at a time, continuously stand for 20 minutes at a time, stand or walk for less than 2 hours in an 8-hour workday, and sit for about 2 hours in an 8-hour workday. (R. 1162.) In addition, he opined, Plaintiff would need to walk for about 5 minutes every 20 minutes; to shift positions at will from sitting, standing, and walking; to take unscheduled breaks for 5 minutes every 20 minutes; and to lie down every 1 to 2 hours. (R. 1162–63.) She could frequently lift less than 10 pounds and occasionally lift 10 pounds. (R. 1163.) She could bend and twist at the waist for only 10% of the workday. (R. 1163.) Dr. Stulc opined that Plaintiff would have no limitations with using her hands or fingers but would be significantly limited with repetitive reaching, handling, and fingering, and she would be 50% limited in reaching overhead repeatedly. (R. 1163.) Finally, Dr. Stulc stated that Plaintiff would be absent from work more than three days a month due to pain. (R. 1164.)

**B. Procedural History**

Plaintiff's DIB and SSI applications were denied at both the initial review and reconsideration stages. She requested an administrative hearing before an ALJ, and the hearing took place on March 10, 2022. (R. 41.)

Plaintiff, medical expert Joseph Gaeta, and vocational expert Mary Harris testified at the hearing. Relevant to the issue presented for judicial review, Plaintiff testified that she could not work because of back pain and trouble standing, lifting, bending, and kneeling.

(R. 47.) She also had problems with focus, concentration, memory, muscle spasms in her calves and feet, and nerve pain in her legs. (R. 51, 53.) She testified she could sit for no more than 15 minutes at a time, stand for no more than 15 minutes at a time, walk no more than about 3 city blocks at a time, and lift no more than about 8 pounds. (R. 47–48.) Plaintiff further testified she was restricted to working from home or from bed. (R. 49.) Dr. Gaeta testified that Plaintiff's physical functional limitations were light levels of activity; sitting for no more than 6 hours in a workday; standing and walking for 6 hours in a workday; lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; and occasionally using ladders and scaffolds. (R. 57–58.) Dr. Gaeta based his testimony on a review of Plaintiff's medical records including her spinal-fusion surgery, the subsequent MRI, and Dr. Stulc's treatment records and physical examination findings. (R. 56–57.)

On March 24, 2022, the ALJ issued a written decision finding Plaintiff not disabled. (R. 7–33.) The ALJ followed the familiar five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920. At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 12.) At the second step of the sequential analysis, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, chronic pain syndrome, major depressive disorder, and generalized anxiety disorder. (R. 13.) At step three, the ALJ concluded that Plaintiff's impairments did not

meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 15.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). As part of the RFC assessment, the ALJ considered Plaintiff's statements about her symptoms concerning pain in her lower back and spine; ability to bend, squat, kneel, climb stairs, stand, lift, carry, walk, and sit; the restriction to working from home or bed; drowsiness from medications; and difficulties concentrating, remembering, and completing tasks. (R. 20.) The ALJ found that Plaintiff's statements were not consistent with the medical and other evidence of record, in particular, medical imaging; a successful spinal-fusion surgery; conservative modalities of treatment; Plaintiff's report of 95% relief of back and spine symptoms; and examinations showing normal strength in the lower extremities, normal reflexes, normal sensation, full range of motion in the lower back and extremities, normal straight leg raises, and normal and stable gait. (R. 20–21.) The ALJ accepted that Plaintiff had some symptoms caused by her impairments, but not the extent she alleged. (R. 23.)

The ALJ also considered Dr. Stulc's opinions in assessing Plaintiff's RFC. The ALJ found both opinions largely not persuasive, because most of the findings and limitations were neither supported by nor consistent with other evidence. (R. 29–30.) The ALJ's discussion of Dr. Stulc's October 2021 opinion follows:

> I considered the opinion of the claimant's treating physician, Steven Stul[c], DO (C13F). In October 2021, Dr. Stul[c] opined that the claimant had permanent limitations with lifting, carrying, sitting, standing, walking, and

> bending. She could work for 20 hours or less during a workweek (C13F/2). I do not find this opinion to be persuasive. Although Dr. Stul[c] indicated that the claimant was limited in the above areas, his opinion was vague and only indicated general limitations in these areas without indicating the level of difficulty that the claimant experienced. Furthermore, although he was more specific with regards to the amount of hours that the claimant could perform on a weekly basis, Dr. Stul[c] did not offer any specific evidence or corroboration for his opinion. He did not reference any treatment notes, physical examination findings, or medical imaging to illustrate[] the claimant's limitation using objective medical evidence. Therefore, Dr. Stul[c]'s opinion was not supported by his medical opinion (C13F/2). Furthermore, to the extent that Dr. Stul[c] identified limitations with lifting, carrying, sitting, standing, walking, and bending, I find these opinions to be somewhat persuasive to the extent that the claimant had some level of limitation in these areas. Although I considered this when evaluating the claimant's level of functioning in these areas, I did not find this opinion to be persuasive in light of opinions with better supportability and consistency in the record. Furthermore, the opinion found the opinion [sic] that the claimant was limited to working 20 hours a week to be unpersuasive. There was no support for this limitation and it was not consistent with any treatment notes identified in the record. Furthermore, there was no indication from any of the claimant's treating physicians that the claimant was able to perform, at most, part-time work. Therefore, his opinion appeared to be based solely on the claimant's own subjective reports without a concrete basis with objective medical findings.

(R. 29–30.)

The ALJ's discussion of Dr. Stulc's February 2022 opinion reads:

> I considered the additional opinion by Dr. Stul[c] (C16F). In February 2022, Dr. Stul[c] opined that the claimant's pain interfered with her attention and concentration. She could walk three city blocks. She could sit for 20 minutes at a time and sit for about 2 hours during an 8-hour workday. She could stand for 20 minutes, and she could sit/stand for less than 2 hours during a workday. She needed to take walking breaks every 20 minutes, which would last for 5 minutes. She needed the ability to transition from sitting, standing, and walking at will. She would need unscheduled breaks every 20 minutes, for 5 minutes. She could frequently lift and carry 10 pounds and occasionally lift and carry 10 pounds. She was limited to bending 10% of the workday and twisting 10% of the work. She had good days and bad days. She would miss more than 4 days of work (C16F). I do not find this opinion to be persuasive. First, his opinion noted limitations in additional areas and noted more

> restrictive limitations than identified in his prior opinion. However, despite noting more limitations, he indicated that he last saw the claimant at the time he made his prior opinion. Therefore, it was unclear on what basis he was identifying the increase in limitations (C16F/2). In addition, like the previous opinion, his opinion was not well supported. Although Dr. Stul[c] referenced some treatment notes, the referenced information appeared to be based on the claimant's own subjective reports with limited concreate and objective findings. He stated that the claimant had 10 out of 10 pain in her lower back. Dr. Stul[c] did note that the claimant had some decreased range of motion, positive straight leg raises, tenderness, and impaired sleep. However, there was no mention of medical imaging or her response to treatment outside these findings. Accordingly, Dr. Stul[c]'s opinion was not supported. Furthermore, as noted above, his opinion was inconsistent with his own opinion that was made about 4 months prior and indicated vastly increased impairments and limitations, without a corresponding treatment visits to indicate why there was a change in his opinion. Moreover, his opinion was further inconsistent with the opinion of the medical expert that appeared at the hearing. Specifically, Dr. Gaeta testified that Dr. Stul[c]'s opinion appeared to be based on subjective reports by the claimant, without objective clinical information in the file (Hearing Testimony). Therefore, because Dr. Stul[c]'s opinion was unsupported and inconsistent with the other evidence in the record, I do not find this opinion to be persuasive.

(R. 30.)

The ALJ also considered Dr. Gaeta's hearing testimony, finding it persuasive:

> I considered the opinion of the medical expert, Joseph Gaeta, MD (Hearing Testimony). At the hearing in March 2022, Dr. Gaeta opined that the claimant did not meet a listing, after considering 1.15 and 4.05. He stated that the claimant's cardiac impairments were nonsevere. Additionally, he noted that the claimant's spinal impairment was severe and caused limitations to light work with frequent postural movements, except only occasional climbing of ladders, ropes, and scaffolds (Hearing Testimony). I find the opinion of Dr. Gaeta to be generally persuasive. First, Dr. Gaeta is a professional in the field of medicine with more than 50 years of experience (C15F). Second, he supported his findings with specific references to the medical record, including the MRI of her spine that showed stable findings in her spine, normal physical examination findings, and conservative levels of care following the alleged onset date. Third, when asked by the claimant's representative regarding discrepancies between his opinion and the opinion of the claimant's treating physician, he was able to give a clear and cogent answer in support of his findings over the opinion of Dr. Stul[c]. Specifically,

> he identified that he based his opinions purely by the objective findings that were available in the record, as noted above. Furthermore, he noted that Dr. Stul[c]'s opinion appeared to be based on subjective reports and symptoms reported by the claimant, which had no support from his own treatment notes because he did not indicate the same level of impairment or severity of findings during regular care. However, although Dr. Gaeta's opinion was well supported and explained at the hearing, I find that the claimant was further limited in light of her history of multiple back surgeries and her reports of chronic and persistent pain that was treated with regular opioid medications. Furthermore, I find that the findings during the psychological consultative examination, although not significantly corroborated with the evidence in the record, I find the physical observations to be convincing and demonstrated functioning consistent with the residual functional capacity as identified above.

(R. 28–29.)

Based on the ALJ's consideration of all the evidence of record, the ALJ assessed Plaintiff's RFC as follows.

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following: she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can frequently balance and occasionally stoop, crouch, crawl, and kneel. She can rarely tolerate exposure to extreme temperatures. She can have no exposure to dangers of life or limb in the workplace. She can rarely tolerate exposure to vibrating objects or surfaces in completing tasks. She cannot be required to work in environments with high, exposed places. With regard to concentration, persistence and pace, she cannot perform work in excess of simple, routine, repetitive tasks. She can occasionally tolerate changes in work setting. She can have no public interaction. She can perform work requiring brief and superficial interaction with supervisors and coworkers . . . . She cannot perform complex decision-making. She cannot perform rapid, assembly-line paced work (for example, she can perform jobs with daily quotas, but not hourly quotas).

(R. 19.) With this RFC, the ALJ concluded, Plaintiff could not perform her past work as a childcare provider, but she could work as an addressing clerk, document preparer, or

electronic assembly worker. (R. 31–32.) Consequently, Plaintiff was not disabled. (R. 32–33.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ committed an error of law, *Nash v. Commissioner, Social Security Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB and SSI, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

Plaintiff argues that the ALJ failed to account for the total limiting effects of her impairments. In particular, Plaintiff contends that the ALJ erred in his consideration of Dr. Stulc's opinion and his evaluation of Plaintiff's statements concerning her symptoms and their resulting limitations. Plaintiff also argues that the ALJ erred in relying on Dr. Gaeta's testimony.

### A. The ALJ Did Not Err in Considering Dr. Stulc's Opinion.

Title 20 C.F.R. §§ 404.1520c and 416.920c set forth the standards under which an ALJ considers medical opinion evidence. An ALJ considers how "persuasive" an opinion is according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The "most important factors" are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to,"

explain how the remaining factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The regulatory language pertaining to supportability provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In evaluating consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In other words, supportability looks to how well the medical source justifies their own opinion, and consistency looks to how well the medical source's opinion fits with evidence from other sources.

Given that the supportability and consistency factors are the most important factors to the persuasiveness determination, an ALJ "will explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . ." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022). The ALJ's failure to articulate how he or she considered these factors is a legal error that warrants remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022

WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

The Court finds that the ALJ properly articulated how he considered the supportability and consistency of Dr. Stulc's opinions. The ALJ explained that Dr. Stulc's October 2021 opinion was vague, described only general functional limitations, and contained no supporting explanations or references to objective medical evidence whatsoever. That description is accurate. With respect to consistency, the ALJ articulated that a limitation to a 20-hour workweek was not consistent with any treatment notes in the record, including visit summaries from Plaintiff's medical providers. Regarding Dr. Stulc's February 2022 opinion, the ALJ explained that the opinion was not supported by objective medical evidence, including treatment notes, medical imaging, or Plaintiff's response to treatment, but was based on Plaintiff's subjective complaints. An ALJ may reduce the persuasive value of an opinion that is based largely on a claimant's subjective complaints. *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022); *see Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (under former regulations, giving "less weight" to an opinion based mostly on subjective complaints). As to supportability, the ALJ articulated that the February 2022 opinion contained greater limitations than the October 2021 opinion, without any explanation for the discrepancies, and without Dr. Stulc having seen Plaintiff in the four months between the opinions. The ALJ also articulated that Dr. Stulc's second

opinion was not consistent with Dr. Gaeta's testimony.[3] In sum, the ALJ adequately articulated how he considered the supportability and consistency of Dr. Stulc's opinions.

The Court now turns to Plaintiff's argument that the ALJ's consideration of Dr. Stulc's opinions was not supported by substantial evidence. The Court acknowledges that there may be evidence that supports and detracts from the ALJ's determination, but the Court will not reweigh the evidence. Suffice it to say, the ALJ identified substantial record evidence, or its lack, to support his consistency and supportability determinations. Specifically, with respect to the October 2021 opinion, the ALJ observed that Dr. Stulc did not refer to any of his own treatment notes, physical examination findings, or imaging (R. 29, 1106); the limitation to a 20-hour work week was not supported by or consistent with any treatment notes (R. 29; *e.g.*, R. 413–32, 674–80, 1100–04); no provider indicated that Plaintiff would be limited to part-time work (R. 29; *e.g.*, R. 413–32, 674–80, 1100–04); and Dr. Stulc's opinion was based on Plaintiff's subjective reports, not objective medical findings (R. 30; *e.g.*, R. 419, 421, 1102). As to the February 2022 opinion, the ALJ stated that Dr. Stulc did not explain the increased limitations from the October 2021 opinion (R. 30, 1160–64); supporting treatment notes did not contain objective or concrete findings and were based primarily on Plaintiff's subjective statements (R. 30, 413–14, 417–18, 1100–01); the opinion did not acknowledge medical imaging or positive responses to treatment (R. 30, 1160–64); and the opinion was inconsistent with Dr. Gaeta's testimony

[3] The Court discusses Dr. Gaeta's testimony in Part III.C below.

(R. 30, 54–59). Consequently, the Court finds that substantial evidence in the record supports the ALJ's consideration of Dr. Stulc's opinions.

### B. The ALJ Did Not Err in Evaluating Plaintiff's Statements Concerning Her Symptoms.

The ALJ considered Plaintiff's testimony about her symptoms and found that her impairments could be expected to cause the alleged symptoms but that the claimed intensity, persistence, and limiting effects of her symptoms were not consistent with the record.

In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ considers the objective medical evidence, statements from the claimant and others, and the following factors:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016); *see* 20 C.F.R. §§ 404.1529(c),

416.929(c). An ALJ need not discuss every factor, but only the factors relevant to assessing the persistence, intensity, and limiting effects of a symptom. SSR 16-3p, 2016 WL 1119029, at *7.

Here, the ALJ considered whether Plaintiff's statements were consistent with objective medical evidence. Specifically, the ALJ summarized medical records that documented examination findings of normal strength and full range of motion, imaging results showing a stable spine, conservative measures of treatment, providers' observations of few limitations and no observable musculoskeletal deficits, and positive responses to physical therapy and medication. (R. 21–23, 26.) On the other hand, the ALJ also took note of medical records that documented findings such as tenderness in the spine, decreased strength, impaired reflexes, and reduced range of motion, but found these deficits were not consistent with Plaintiff's self-reports of the severity of her symptoms. (R. 21–22.) As the ALJ observed, no provider recommended that Plaintiff should work only from home or in bed. (R. 26.) The ALJ also considered that Plaintiff's level of care generally remained the same, and she did not require additional surgeries, increased medication, or the use of assistive devices. (R. 24.) Regarding side effects of medication, the ALJ noted that Plaintiff often did not report drowsiness or other side effects to her providers. (R. 25.)

The ALJ accounted for some intensity, persistence, and limiting effects of symptoms and reduced Plaintiff's capacity to do work-related activities accordingly. Specifically, the ALJ limited Plaintiff to sedentary work to avoid triggering or exacerbating her pain and to accommodate her limited range of motion and abnormal gait. (R. 25.) The ALJ also added limitations on climbing, balancing, stopping, crouching, crawling,

kneeling, and on exposure to extreme temperatures, vibration, and high places, to account for Plaintiff's low-back pain, limited range of motion, and spinal tenderness. (R. 25.)

The Court finds that the ALJ did not err in evaluating Plaintiff's symptoms. Substantial evidence supports the ALJ's conclusion that the claimed intensity, persistence, and limiting effects of Plaintiff's symptoms were inconsistent with the objective medical evidence and other relevant evidence of record.

**C. The ALJ Did Not Err in Relying on Dr. Gaeta's Testimony.**

Plaintiff challenges the ALJ's reliance on Dr. Gaeta's testimony. Plaintiff claims that "her argument does not depend on finding his testimony unpersuasive." (Pl.'s Br. at 25.) Rather, she asks the Court to find that "Dr. Stulc's opinion is *at least as persuasive* as Dr. Gaeta's," and then to find that the ALJ erred by not considering the other factors of 20 C.F.R. §§ 404.1520c(c) and 416.920c(c) (relationship with the claimant, specialization, and any other relevant factors). Plaintiff's argument is based on section (b)(3) of 20 C.F.R. §§ 404.1520c and 416.920c, which requires an ALJ to articulate how the ALJ considered the other factors in paragraphs (c)(3) through (c)(5) when the ALJ finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, the ALJ did not find that Dr. Gaeta's and Dr. Stulc's opinions were equally persuasive, so section (b)(3) does not apply. Furthermore, the Court's ruling that the ALJ's consideration of Dr. Stulc's opinions was not erroneous essentially forecloses Plaintiff's

argument. Dr. Stulc's and Dr. Gaeta's medical opinions are not "equally well-supported" or equally "consistent with the record."

Although Plaintiff denies that she is challenging the persuasiveness of Dr. Gaeta's opinion, the Court will briefly address the issue in the interest of thoroughness. The ALJ articulated that he found Dr. Gaeta's testimony "generally persuasive" because Dr. Gaeta is an experienced medical professional; Dr. Gaeta supported his findings with references to the medical record including imaging, normal examination findings, and conservative levels of care; and Dr. Gaeta cogently explained the differences between his opinion and Dr. Stulc's opinion. (R. 28–29.) The Court finds, first, that the ALJ adequately explained how he considered the supportability and consistency factors as they relate to Dr. Gaeta's opinion, and thus committed no legal error. The Court finds, second, that substantial evidence of record supports those consistency and supportability determinations. Specifically, Dr. Gaeta is an experienced medical professional and medical expert (R. 1156–58), and Plaintiff's representative did not object to Dr. Gaeta testifying as a medical expert at the hearing (R. 53–54). Dr. Gaeta testified that he reviewed Plaintiff's medical records, and he referred to her spinal-fusion surgery, subsequent imaging that showed no nerve impingement and satisfactory positioning of the fusion implants, Dr. Stulc's physical examination records that documented no particular functional abnormalities, and generally "fine" range of motion, strength, and reflexes. (R. 54, 56–57.) Dr. Gaeta testified that the functional limitations in his opinion differed from those in Dr. Stulc's opinion, because his opinion was based on objective findings, whereas Dr. Stulc's opinion could have been based more on subjective symptoms. (R. 58–59.) The Court has already concluded that the

evidence described by Dr. Gaeta constitutes substantial evidence of record. The ALJ did not err in deeming Dr. Gaeta's opinion persuasive.

## IV. Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 16) is **DENIED**;
2. The relief requested in Defendant's Brief (Dkt No. 18) is **GRANTED**, and the Commissioner's final decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: March 22, 2024

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge